Daisy E. BICKEL, Representative for Edna Doris Miller; Dorothy Jones, Estate of Joyce Chambers; Willie N. James, Personal Representative of the Estate of Hazel Jeanne James, Plaintiffs–Appellees,

Richard A. Bowden, Individually and as Personal Representative of the Estate of Eleanor Beatrice Young Bissell, Plaintiff–Appellee, Cross–Appellant,

Michael D. Jones, Personal Representative of the Estate of Margaret Zarif, a/k/a Margaret Jones, Plaintiff–Appellee, Cross–Appellant,

v.

KOREAN AIR LINES COMPANY, LTD., Defendant–Appellant, Cross–Appellee.

Nos. 93–2144, 93–2259, 93–2549, 94–1095, 94–1096, 94–1098, 94–1100 and 94–1101.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 31, 1995.

Decided April 29, 1996.

Gerald G. White, Timothy J. Currier, Robert G. Waddell, Beier & Howlett, Bloomfield Hills, MI, Kevin L. Mosley, Aaron J. Broder (argued and briefed), Meryl I. Schwartz, F. Lee Bailey Assoc., New York City, for Plaintiff-Appellee Bickel in No. 93-2144.

Timothy J. Currier, Beier & Howlett, Bloomfield Hills, MI, Kevin L. Mosley, Aaron J. Broder (argued and briefed), Meryl I. Schwartz, F. Lee Bailey Assoc., New York City, for Plaintiff-Appellee Bickel in No. 93-2259.

David R. Parker (argued and briefed), Lawrence F. Charfoos, Charfoos & Christensen, Detroit, MI, for Plaintiffs-Appellees Chambers and Jones in No. 93-2549.

Angela J. Nicita (argued and briefed), Michael S. Mazur, Patricia A. Murray, Chambers, Steiner, Mazur, Ornstein & Amlin, Detroit, MI, for Plaintiff-Appellee James in No. 94-1095.

George M. Head (argued and briefed), David William Potts (briefed), Carson Fischer, Birmingham, MI, for Plaintiff-Appellee, Cross-Appellant Bowden in Nos. 94-1096, 94-1098.

Steven R. Gabel (argued and briefed), Gerald E. Thurswell, Thurswell, Chayet & Weiner, Southfield, MI, for Plaintiff-Appellee, Cross-Appellant Jones in Nos. 94-1100, 94-1101.

Robert R. Florka, Birmingham, MI, Andrew J. Harakas (argued and briefed), Jeanine C. Veracoechea, George N. Tompkins, Jr. (briefed), Tompkins, Harakas, Elsasser & Tompkins, White Plains, NY, for Defendant-Appellant, Cross-Appellee Korean Air Lines Company, Ltd.

Before: MERRITT, Chief Judge; BROWN and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The underlying facts of these cases are quite notorious. They have been set forth in some considerable detail elsewhere, *see In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475, 1477–1479 (D.C.Cir.) (*Korean Air*), *cert. denied,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991), and it is, therefore, unnecessary to do so again here. In short, on September 1, 1983, a Korean Air Lines (KAL) airliner *en route* from New York to Seoul, South Korea, strayed into the airspace of the former U.S.S.R. The KAL airliner crashed into the Sea of Japan after being struck by missiles fired from a U.S.S.R. military fighter plane. The crash killed all 269 persons aboard. Personal representatives of five of those killed in the

incident brought these actions against KAL in the federal district court sitting in Michigan. After the actions were tried in the district court, the parties timely appealed.

## I.

The Warsaw Convention provides a cause of action for injuries and deaths occurring on international commercial flights, such as the KAL flight at issue in these cases. *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* note following 49 U.S.C.A. § 1502 (West 1976) ("Warsaw Convention"); *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988*, 928 F.2d 1267, 1273–74 (2d Cir.), *("Lockerbie I")*, *cert. denied*, 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

Ordinarily, recovery under the Warsaw Convention is limited to $75,000. *See* Article 22(1), Warsaw Convention; Agreement Relating to Liability Limitations of the Warsaw Convention and Hague Protocol, CAB Agreement 18900, *reprinted in* note following 49 U.S.C.A. § 1502 (West 1976) (approved by CAB Order E–23680, May 13, 1966, 31 Fed. Reg. 7302) ("Montreal Agreement") (raising amounts recoverable under the Warsaw Convention to $75,000). In these cases, however, because KAL's "willful misconduct" proximately caused the passengers' deaths,[1] the $75,000 limit has been lifted. *See* Article 25(1), Warsaw Convention.

The suits which form the basis for the instant appeal proceeded to trial on the issue of compensatory damages. All the cases, except the one brought by Michael Jones on behalf of decedent Margaret Zarif, were tried to a jury. Jones' suit was tried to the bench.

At each trial, KAL moved to have the district court hold as a matter of law: (1) that the Death on the High Seas Act ("DOH-SA"), 46 U.S.C.A. § 761 *et seq.* (West 1975), governed the question of who were the proper beneficiaries for pecuniary damages or, in the alternative, (2) that if non-pecuniary damages were allowed, such damages would only be recoverable by spouses and financially dependent relatives. The district court denied KAL's motions and held that the plaintiffs' non-dependent relatives were beneficiaries entitled to recover pecuniary, as well as non-pecuniary, damages.

Plaintiffs received varying sums as non-pecuniary damages for wrongful death and survival, including loss of society, survivor's grief, and pain and suffering of the deceased.

## II.

Article 17 of the Warsaw Convention makes an airline liable for "damage sustained" in the event of the death of a passenger:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Article 17, Warsaw Convention.

Article 24(2) of the Warsaw Convention states that every action for damages covered by Article 17 is subject to the conditions and limits of the Convention, "without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights." Article 24(2), Warsaw Convention. Thus, as the Supreme Court recently noted in *Zicherman v. KAL*, ⸺ U.S. ⸺, ⸺ ⸺, ⸺, 116 S.Ct. 629, 632–635, 637, 133 L.Ed.2d 596 (1996), the domestic law of a party to the Warsaw Convention determines who can bring an action and what "damages sustained" they can

---

1. The Judicial Panel on Multidistrict Litigation transferred all federal court actions arising out of the KAL crash, including these, to the District of Columbia for trial on the common issue of liability. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 575 F.Supp. 342 (J.P.M.L.1983). A jury found that the crash was proximately caused by KAL's "willful misconduct." *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475 (D.C.Cir.) (*Korean Air*), *cert. denied*, 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). Thereafter, the Multidistrict Panel remanded the individual cases to their courts of origin to determine damages. In the cases at bar, the proceedings were returned to the Eastern District Court of Michigan, Judge Taylor presiding.

recover. *See also Mertens v. Flying Tiger Line,* 341 F.2d 851, 858 (2d Cir.), *cert. denied,* 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965).

## A.

Because Article 24(2) of the Warsaw Convention requires courts to measure damages according to the internal law of a party to the Convention, we must provide a choice of law analysis to decide which nation's law to apply. *See Zicherman,* —— U.S. at ——, 116 S.Ct. at 637 (concluding that the Warsaw Convention leaves the specification of legally cognizable harm to be determined under the forum's choice-of-law rules).

Jurisdiction in these cases was based only in part on diversity. In *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Supreme Court held that a federal court sitting in diversity must apply the law of the state in which it sits. *Id.* at 496, 61 S.Ct. at 1021–22. The diversity of citizenship here, however, is not the sort of diversity that *Klaxon* addressed when it announced its rule. We do not here have parties who are citizens of different states of the United States. Instead, the parties here are citizens of the United States, on the one hand, and a foreign national, KAL, on the other. Additionally, unlike the dispute in *Klaxon,* these cases arise under 28 U.S.C. § 1331 (because they involve the interpretation of the Warsaw Convention) and 28 U.S.C. § 1333 (because they involve DOHSA which provides for a cause of action to be brought under federal courts' admiralty jurisdiction). Under these circumstances, we are not compelled to follow *Klaxon.* And we do not.

■ To answer the choice of law question presented by these cases, we apply a federal choice of law rule. In doing so, we are mindful that there is "no federal general common law," *O'Melveny & Myers v. F.D.I.C.,* —— U.S. ——, ——, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). The Warsaw Convention, however, embodies a concrete federal policy of uniformity and certainty, *see Lockerbie I,* 928 F.2d at 1275, which would be undermined by the use of state choice of law rules. Consequently, we are of the view that these cases present precisely the type of situation in which it is appropriate to craft a special federal rule which, in these cases, is a choice of law rule.[2] *See O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2055 (creation of a special federal rule limited to situations where there is a "significant conflict between some federal policy or interest and the use of state law").

In the absence of any established body of federal choice of law rules, we begin with the Restatement (Second) of Conflict of Laws (1969) as a "general source of conflict of law principles." *See Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1003 (9th Cir.1987). For wrongful death actions, § 175 of the Restatement (Second) creates a presumption in favor of the law of the place where the injury occurred (known as the *lex loci delicti* rule):

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the more particular issue, some other state has a more significant relationship under the principles stated in§ 6 to the occurrence and the parties, in which event the local law of the other state will be applied.[3]

■ While the presumption in these cases would counsel applying the law of the former U.S.S.R., we take judicial notice of the fact that by the time the respective actions in-

---

**2.** Nothing in the Supreme Court's recent *Zicherman* opinion suggests that crafting a special federal choice of law rule in these cases is inappropriate. Indeed, the *Zicherman* Court did not have to address this question because of the parties' stipulation that United States law applied. *See Zicherman,* —— U.S. at ——, 116 S.Ct. at 635. *Zicherman's* ruling that the only issue of what damages were recoverable was governed by federal law (DOHSA), *id.* at ——, 116 S.Ct. at 636, and federal law exclusively, lends weight to our conclusion that the use of state choice of law rules is not appropriate.

**3.** A state "denotes a territorial unit with a distinct general body of law." Restatement (Second) § 3. Thus, the United States, South Korea, and the former U.S.S.R. are all states.

volved in this appeal came to trial, the U.S.S.R. had ceased to exist.[4] The U.S.S.R. *qua* the U.S.S.R., therefore, no longer has a judicially cognizable interest in these matters, including for choice of law purposes, and none of the parties argues that any of the successor states to the U.S.S.R. have retained whatever interest the U.S.S.R. otherwise may have had. *See In re Air Crash Disaster Near Saigon, S. Vietnam on Apr. 4, 1975,* 476 F.Supp. 521, 528 (D.D.C.1979).

We are, as a result, left to decide whether it is the law of the United States or the law of South Korea that governs the outcome of these cases. For our answer, we again turn to the Restatement (Second) of Conflict of Laws, which, in § 6, suggests that we take into account the following factors:

   (a) the needs of the interstate and international systems;

   (b) the relevant policies of the forum;

   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

   (d) the protection of justified expectations;

   (e) the basic policies underlying the particular field of law;

   (f) certainty, predictability, and uniformity of result; and

   (g) ease in the determination and application of the law to be applied.

■ While both the United States and South Korea have legitimate contacts,[5] a proper balance of these factors leads us to conclude that the law of these cases is governed by the internal law of the United States. First, application of United States law supports "ease in the determination and application of the law to be applied." § 6(g). Second, the Supreme Court and our sister circuits have already applied United States law in other cases involving this disaster, *see, e.g., Zicherman; Korean Air,* implying that "certainty, predictability, and uniformity of result," would best be served by following

their lead. § 6(f). Third, because these actions arise under the Warsaw Convention, neither nation can legitimately claim to offer greater protection of "the basic policies underlying the particular field of law," or "the needs of the interstate and international systems." §§ 6(e), (a). And fourth, "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," weigh heavily in favor of the United States. § 6(c).

These cases involve only compensatory damages, and courts have noted that decedents' home jurisdictions have a legitimate interest in the recovery of compensatory damages. *See, e.g., In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979,* 644 F.2d 594, 612–613 (7th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981) (holding that, in a domestic airline crash involving the states of domicile of the plaintiffs and defendants, the plaintiffs' home states lacked an interest in punitive damages because "[t]he legitimate interests of these states, after all, are limited to assuring that the plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries."); *Korean Air,* 932 F.2d at 1499 (Mikva, J., dissenting). We think that this reasoning, which is normally employed in domestic actions, has significant force in these international actions as well, particularly since it is United States law that has been applied in other actions arising out of this air crash. *See, e.g., Zicherman.*

### B.

■ Having concluded that United States law governs these cases, our inquiry into the availability of loss of society and survivor's grief damages follows the path laid out by the Supreme Court in *Zicherman. Zicherman* requires us to apply DOHSA, 46 U.S.C.A. §§ 761 *et seq.* (West 1975), as the internal law of the United States which gov-

---

**4.** Trial took place in 1993.

**5.** On the one hand, South Korea serves as KAL's place of incorporation, KAL's principal place of business, and the place where KAL's crews are trained. *Korean Air,* 932 F.2d at 1498 (Mikva, J.,

dissenting). On the other, many of the KAL airliner's passengers (including the five decedents in these cases) came from the United States, where the KAL flight began and where all of the tickets were purchased. *Id.*

erns the outcome of the matters *sub judice. Id.,* —— U.S. at ——, 116 S.Ct. at 636. In *Zicherman,* the Supreme Court held that where DOHSA applies, it is the exclusive source of damages recoverable in the wrongful death claims. *Id.*

■ Finding that DOHSA permits only pecuniary damages, *Zicherman* held that loss of society damages, not being "pecuniary," could not be recovered under DOHSA. *Id.* at ——, 116 S.Ct. at 637. In accordance with that holding, we reverse the district court's award of such damages.

As to the recoverability of survivor's grief damages under DOHSA, we note that the Supreme Court did not directly address this issue. We cannot, however, perceive any distinction of which the *Zicherman* Court would have approved that would permit us to conclude that the recovery of one sort of non-pecuniary damages, such as loss of society, is precluded by DOHSA, whereas other sorts of non-pecuniary damages, such as survivor's grief, are not. We, therefore, hold that it was reversible error for the district court to permit any damages for survivor's grief. *See id.*

Because we hold that loss of society and survivor's grief awards are not available, we need not consider KAL's alternative argument that only spouses and financially-dependent relatives may recover such awards.

### C.

We also reverse the district court's award of damages for the pain and suffering of the decedents. Although such awards have been engrafted onto recovery awards under DOH-SA pursuant to several different theories, *see e.g., Solomon v. Warren,* 540 F.2d 777, 792 (5th Cir.1976) (permitting recovery for decedent's pain and suffering on the theory that state law provides a cause of action for such damages), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *Favaloro v. S/S Golden Gate,* 687 F.Supp. 475, 480 (N.D.Cal.1987) (permitting recovery for decedent's pain and suffering on the theory that general maritime law provides a cause of action for such damages); *In re Air Crash Disaster Near Honolulu, Haw., on Feb. 24,* *1989,* 783 F.Supp. 1261, 1265 (N.D.Cal.1992) (permitting recovery for decedent's pain and suffering on the theory that the Warsaw Convention provides a cause of action for such damages), there is no serious doubt that DOHSA itself does not provide for such a form of damages. *Zicherman,* —— U.S. at ——–——, 116 S.Ct. at 636–637. Despite the fact that the *Zicherman* Court was not asked to address the propriety of allowing a pain and suffering award, *see id.* at —— n. 4, 116 S.Ct. at 636 n. 4, we think the principle of *Zicherman* constitutes an insuperable obstacle to an award of pain and suffering damages—clearly non-pecuniary damages—in these cases. Thus, for the same reasons we reversed the survivor's grief damages, we now reverse the award of pain and suffering damages.

### III.

For the forgoing reasons, we **REVERSE** the order of the district court and **REMAND** for entry of judgment consistent with this opinion.