William T. WULIGER, Plaintiff,

v.

Steven A. SEWELL, Defendant.

No. 3:03 CV 719.

United States District Court,
N.D. Ohio,
Western Division.

April 6, 2005.

Roger J. Katz, Chesterland, OH, Victor M. Javitch, Javitch, Block & Rathbone, Cleveland, OH, for Plaintiff.

Dana Childress–Jones, Gregory F. Hahn, Tabbert, Hahn, Earnest & Weddle, Indianapolis, IN, for Defendant.

## MEMORANDUM OPINION

KATZ, Senior District Judge.

This matter is before the Court on the Defendant's motion to dismiss and Plaintiff's response thereto. For the reasons stated below, the Defendant's motion is granted in part and denied in part.

### BACKGROUND

Plaintiff William T. Wuliger ("Wuliger") commenced this action against Defendant for recovery of commissions in connection with the sale of viatical investments. This case is an outgrowth of the *Liberte v. Capwill*[1] litigation which has spawned satellite litigation in state and federal courts. The essence of this action contends that Defendant Steven Sewell entered into an agent sales agreement whereby he solicited individuals to invest in viatical settlements offered by Alpha Capital Group ("Alpha"). In return, Sewell is alleged to have received approximately $100,564.05 in commissions.

Wuliger was appointed Receiver of Alpha in the fall of 2001. Thereafter, he was authorized by the Court in the *Liberte* action, in part, to:

[U]se his best judgment to protect the rights of Alpha investors and to discharge his duties in a manner calculated to preserve the greatest monetary recovery for the maximum number of all Alpha investors.

(*Liberte*, Doc. No. 1290.) One year later those responsibilities included the right to pursue actions against Liberte and Alpha agents and brokers. (*Liberte*, Doc. No. 1758.) More recently, the Court clarified the expanded role of both the General and Alpha Receivers, stating that:

[I]n keeping with the ultimate goal of maximizing the estates for the benefit of the investors, [the Receivers] are em-

---

1. *Liberte v. Capwill*, Case No. 5:99 CV 818 (N.D.Ohio) revolves around the viatical settlement industry. Plaintiff Liberte Capital LLC ("Liberte") and Intervening Plaintiffs Alpha Capital Group LLC and Integrity Management Partners, LLC (collectively "Alpha") were engaged in the business of purchasing insurance policies from terminally ill policy-holders willing to sell their rights to the policies. Liberte also solicited investors for policies on the lives of seniors without terminal illness. Investors were solicited by Liberte and Alpha to purchase viatical life insurance investment programs whereby investors were matched in many cases with the policy on the terminally ill person or "viator".

powered to represent and pursue the interests of the investors directly. The Receivers shall further continue to carry out their duties and obligations as set forth by previous and existing Order of the Court. Finally, the Receivers shall continue to coordinate their efforts with class counsel to recover, protect and preserve receivership assets.

(Doc. No.1982.)

Wuliger initiated this suit in April 2003 against Sewell, alleging the following claims: (1) violations of the 1933 Securities Act, 15 U.S.C. § 77; (2) violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78 j; (3) violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and 1964(c); (4) common law fraud; (5) fraud in the inducement; (6) breach of contract; (7) unjust enrichment; (6) conversion; (9) breach of fiduciary duty/breach of covenant to act in good faith and fair dealing; and (10) intentional or negligent misrepresentation. Sewell now moves for dismissal of these claims under Fed.R.Civ.P. 12(b)(2) and (6).

### MOTION TO DISMISS

#### A. Legal Standard Applicable

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2004).

Plaintiffs bear the burden of making a prima facie showing that the Court has jurisdiction over the person of each Defendant to the action. On a motion to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2), the Court treats the allegations contained in Plaintiffs' complaint, affidavits, and depositions as true, and resolves any factual dispute in Plaintiffs' favor. *Welsh v. Gibbs,* 631 F.2d 436, 438–39 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Gold Circle Stores v. Body Maven, Inc.,* 711 F.Supp. 897, 899 (S.D.Ohio 1988).

#### B. Personal Jurisdiction

■ In support of his motion, the Defendant advocates a lack of sufficient minimum contacts with Ohio insofar as Plaintiff is unable to establish the existence of either general or specific jurisdiction. The Plaintiff provides a full response to the Defendant's challenge under *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and correctly notes the Sixth Circuit's position where there exists a basis for nationwide service of process. *Medical Mut. of Ohio v. deSoto,* 245 F.3d 561 (6th Cir.2001).

Where statutory authority exists for national service of process, the minimum contacts analysis is altered by applying the national contacts test *Id.* at 566. While the situation in *deSoto* involved ERISA, the Sixth Circuit used the national service provision pertaining to the Securities Exchange Act of 1934 as an example, which is equally applicable here. That provision states in pertinent part:

Any suit or action to enforce any liability or duty created by this chapter or rules

and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa. Application of a nationwide service statute has been deemed "as broad as the limits of due process under the Fifth Amendment." *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 299 n. 13 (3d Cir.2004) (collecting cases including *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir.1993)). As noted by the Sixth Circuit in *deSoto:*

> [W]hen a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States. [ ] This reading of the Due Process Clause, in addition to being not inconsistent with the Court's statements in *Insurance Corp. of Ireland*, is supported by its more recent explanation of the Clause's effect. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

245 F.3d at 567–568. *See also Obee v. Teleshare, Inc.*, 725 F.Supp. 913, 915 (E.D.Mich.1989).

While Defendant disputes he has engaged in business or has a presence in the state of Ohio, he does not dispute the factual contention that he resides in the United States. Accordingly, the Plaintiff has established personal jurisdiction over the Defendant and this branch of his motion is denied.

*C. Statutes of Limitations Relative to Securities Claims (Counts 1 and 2)*

The starting point for this analysis begins with the relevant statute. Regarding statutory construction, the Sixth Circuit has set forth the following guidelines:

> "In all cases of statutory construction, the starting point is the language employed by Congress." *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.1995). Moreover, where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation and internal punctuation omitted).

*Chapman v. Higbee Co.*, 319 F.3d 825, 829 (6th Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 2902, 159 L.Ed.2d 827 (2004). It is only when "a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress" that a court may "look beyond the language of the statute." *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir.1999), citing *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

The statute of limitations applicable to the claim under the 1933 Act is set forth at 15 U.S.C. § 77m, which states as follows:

> No action shall be maintained to enforce any liability created under section 77k or 77 *l* (a)(2) of this title *unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable dili-*

*gence,* or, if the action is to enforce a liability created under section 77 *l* (a)(1) of this title, unless brought within one year after the violation upon which it is based. *In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.*

(Emphasis added.) In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court adopted the one and three year periods of limitations found in sections 9(e) and 18(a) of the 1934 Act and in section 13 of the 1933 Act. Therefore, in order to maintain a private securities action under section 9(e), the action must be "brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e).

1. *Inquiry Notice*

█ In the Sixth Circuit, the applicable one year statute of limitation is triggered by inquiry notice. *New England Health Care Employees Pension Fund v. Ernst & Young,* 336 F.3d 495, 500 (6th Cir.2003), *cert. denied,* 540 U.S. 1183, 124 S.Ct. 1424, 158 L.Ed.2d 87 (2004). *See also, Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.,* 940 F.Supp. 1101, 1118 (W.D.Mich.1996) (noting applicability of one and three year rule to claims brought under both Exchange and Securities Acts as well as trigger under inquiry notice standard). *See also, Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993), *cert. denied,* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994).

█ In *New England,* the Sixth Circuit discussed considerations relevant to inquiry notice as follows:

The majority view, [ ], is that knowledge of suspicious facts—"storm warnings," they are frequently called—merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud ... This view, we believe, reflects an appropriate balance between the staunch federal interest in requiring plaintiffs to bring suit promptly ... and the equally strong interest in not driving plaintiffs to bring suit ... before they are able, in the exercise of reasonable diligent, to discover the facts necessary to support their claims ... We conclude, in accordance with the majority view, that the § 9(e) limitations period begins to run when a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud.

336 F.3d at 501. (Citations omitted.) Based upon this standard, the relevant issue is when "storm warnings" were on the radar screen sufficient to alert the claimant that things were amiss, thereby triggering the claimants to exercise reasonable diligence in discovering the facts forming the basis of their claim. Moreover, the plaintiff is charged with the burden of establishing the action was commenced within the statute of limitations, therefore he must demonstrate "the point at which he knew or should have known of the fraud." *Harner v. Prudential Securities Inc.,* 785 F.Supp. 626, 632 (E.D.Mich. 1992), *aff'd* 35 F.3d 565, 1994 WL 494871 (6th Cir.1994).

The *Liberte* action was commenced on April 8, 1999. On July 15, 1999, the Court appointed a receiver[2] for the Capwill-re-

**2.** Initially Frederick M. Luper was appointed as Receiver and was succeeded by Victor M. Javitch on June 26, 2000 (*Liberte* Doc. No. 562).

lated entities of VES and CFL. *Liberte,* Doc. No. 132.

◼ In September 2000, John Wayne Lazar ("Lazar"), a Liberte investor, sought to intervene in that litigation. Based upon the filings in the *Liberte,* it is clear that all investors, both Liberte and Alpha, were on notice of the problems with their investments as early as July 1999 and certainly no later than July 2000. According to those documents, they were aware of the purported fraud by Capwill and VES and the resulting havoc upon their monies. The second status report of the Plaintiff herein, in October 2000 (*Liberte* Doc. No. 787) addressed efforts to recover commissions from Liberte and Alpha agents and brokers. This information was contained on the Court's docket and also on the General Receiver's website aimed at informing the investors.

◼ This Court is mindful that inquiry notice does not require knowledge of all facts necessary to bring an action. *See Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1334–1335 (7th Cir. 1997); *Caviness v. Derand Resources Corp.,* 983 F.2d 1295, 1303 (4th Cir.1993). *See also In re WorldCom, Inc. Securities Litigation,* 294 F.Supp.2d 431, 444–445 (S.D.N.Y.2003); *In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d 351, 379–380 (S.D.N.Y.2003). However, considering the relevant information available to the investors, circumstances were sufficient to place the investors on notice as to serious problems with their investments. Despite the evolving nature of the *Liberte* case, the investors knew the identities of their agents as the agents were the conduit through which the viatical settlements were presented to them. The pursuit of information and/or claims relative to those agents by the investors was not prohibited by the Court until October 2002, as previously referenced In this Court's view, the "storm warnings" were brewing and suffi-

ciently developed to have placed a reasonable investor on notice as to the possibility of misrepresentations no later than the end of 2000. Since this litigation was not commenced until April 2003, it is clearly outside the one year statute under the applicable statutes of limitations.

2. *Statute of Repose*

◼ Assuming *arguendo* that this action was timely filed following inquiry notice, the analysis must also consider application of the three year statute of repose. The statute clearly states that "[i]n no event shall such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public or under section 77l(2) of this title *more than three years after the sale.*" 15 U.S.C. § 77m.

◼ Unlike statutes of limitations, statutes of repose serve to extinguish the claim and "rest[ ] on the time from some initiating event unrelated to an injury." *Combs v. International Ins. Co.,* 354 F.3d 568, 589 n. 11 (6th Cir.2004) (citation omitted). Relevant to the issue at hand, claims brought after the three year period of repose which are triggered by the last event underlying the claim are barred regardless of when the plaintiff discovered the facts. *See Walck v. Am. Stock Exch.,* 687 F.2d 778 (3d Cir.1982), *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983); *In re Integrated Res. Inc., Real Estate Ltd. Partnerships Sec. Litig.,* 851 F.Supp. 556 (S.D.N.Y.1994) (three-year statute of limitations period absolute and cannot be tolled under the fraudulent concealment or discovery doctrines).

The statutory language identifies a sale as the triggering event. While the complaint does not specify the dates of sales by the Defendants, construing the allegations most favorably to the Plaintiff and in light of the preliminary injunction by the

Court (in the *Liberte* case) on August 1, 1999, sales of viaticals occurred no later than that date. Accordingly, if the last sale occurred in July 1999, the applicable three year statute of repose would have run no later than July 2002.

The Receiver also contends that application of the statute of repose could not have commenced and been extinguished before it was possible to commence this action. However, a recent decision from the Second Circuit addresses this concern:

> [A] statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not .yet, or could not have, discovered that she has a cause of action.

*P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92, 102–103 (2d Cir.2004), citing *Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 704 (2d Cir.1994). The Court in *Stolz*[3] explained the rationale as follows:

> In general, a statute of repose acts to define temporally the right to initiate suit against a defendant after a legislatively defined time period. Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit . . .
>
> In principle, by limiting the substantive or procedural rights of plaintiffs, all statutes of limitation or repose always tend to cut against the remedial results that plaintiffs might otherwise enjoy. And these remedial results may be best

furthered, without losing one of the principal benefits of a statute of repose—to provide an easily ascertainable and certain date for the quieting of litigation—by lengthening the period before repose takes effect.

*Id.* at 102–104.

The Receiver is correct that a purpose behind federal securities laws is protecting investors. In this instance, the Court is well aware of the diligent efforts of the Receiver given the complexity of the *Liberte* litigation as well as the Court's directives and subsequent expansions on the Receiver's authority. The Court also recognizes the Receiver's efforts in the *Liberte*-related litigation, such as the present action, all in the name of marshaling assets for the benefit of the investors.

By setting statutes of limitations and statutes of repose, however, Congress also recognized a definitive end to liability from suit. In considering statutory language, a court must be careful not to "construe a statute in a manner that renders part of the law superfluous." *United States v. Perry*, 360 F.3d 519, 537 (6th Cir.2004) (citations omitted). The Receiver's position that the statute of limitations has yet to be commenced would fly in the face of straightforward statutory construction as advocated by the Sixth Circuit and run contrary to Congress's clear intent.

The Receiver cannot properly claim to have acquired this claim free from infirmity since to accept such a premise is tantamount to obliterating the relevant statutes of limitations/repose. This view does not support the general jurisprudence regarding statutes of limitations[4] and would re-

---

**3.** *Stoltz* involved unregistered securities and whether the statute of repose was triggered upon the first bona fide offering to the public or the last offering. In its decision, the Second Circuit noted that the SEC in its *amicus* brief provided "evidence suggesting that Congress intended the three-year period to begin

to run when a security is *first* sold to the public." *Id.* at 105 (emphasis in original).

**4.** "Statutes of limitation are statutes of repose representing 'a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale

quire this Court to create an exception without a basis in law. In the absence of statutory authority to the contrary, the Court finds as a matter of law that the securities claims are untimely.

## D. Impact of Sarbanes–Oxley

In the wake of the Enron debacle, Congress enacted the Sarbanes–Oxley Act[5] which extended the statute of limitations relative to securities fraud claims as follows:

> TIME LIMITATIONS ON THE COMMENCEMENT OF CIVIL ACTIONS ARISING UNDER ACTS OF CONGRESS
>
> Notwithstanding subsection(a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78(a)(47)[6]), may be brought not later than the earlier of—
>
> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation.

28 U.S.C. § 1658(b). Previously, the statute of limitations had been 1 and 3 years, respectively. The applicability provisions of the statute notes that this section "shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act [July 30, 2002]."

### 1. Judicial Interpretation of Sarbanes–Oxley

Thus far, only a handful of courts have had occasion to consider the retroactivity of Sarbanes–Oxley. The district court in

*Roberts v. Dean Witter Reynolds,* 2003 WL 1936116 (M.D.Fla. March 31, 2003) (unpublished) was the first to consider the retroactivity of Sarbanes–Oxley and its impact on reviving a securities fraud claim barred under the previous statute of limitations. There, the court found the Act served to revive plaintiffs' claims, based upon the statements of Senator Leahy made on July 10, 2002, and upon the congressional record, which addressed the application of the provision to then pending legislation.

The next district court to consider this issue was in the context of a case involving investors suing principals of a defunct securities underwriter. *In re Heritage Bond Litigation,* 289 F.Supp.2d 1132 (C.D.Cal. 2003). There, the district court determined the plaintiffs' claims were barred by the existing statute of limitations and could not be revived by the amendments under Sarbanes–Oxley. The court found the lack of clear direction on this issue in the statutory language coupled with the case law which prohibited retroactivity where it would "alter the substantive rights" and "increase a party's liability," *Id.* at 1148, citing *Chenault v. U.S. Postal Service,* 37 F.3d 535, 539 (9th Cir.1994).

A subsequent action involving claims of security fraud was also challenged as being outside the statute of limitations in *Glaser v. Enzo Biochem, Inc.,* 303 F.Supp.2d 724 (E.D.Va. July 16, 2003), *aff'd in part,* 126 Fed.Appx. 593, 598, 2005 WL 647745 at *4 (4th Cir.2005) ("plaintiffs' refiling after Sarbanes–Oxley took effect did not revive any claim that was otherwise barred by the statute of limitations"). A primary

---

claims in time comes to prevail over the right to prosecute them.' " *United States v. Currency $515,060.42,* 152 F.3d 491, 503 (6th Cir.1998), citing *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

**5.** Public Company Accounting Reform and Investor Protection Act of 2002, Publ. L. No. 107–204 § 804, 116 Stat. 745, 801, codified at 28 U.S.C. § 1658(b).

**6.** "The term 'securities laws' means the Securities Act of 1933 (15 U.S.C. 77a et seq)."

issue was whether the Sarbanes–Oxley amendment revived the plaintiffs' claims which were barred under the previous one year statute of limitations. The plaintiffs in *Glaser* filed two complaints, one prior and one subsequent to the Sarbanes–Oxley amendment. In rejecting the plaintiffs' argument of reviving the claims vis-a-vis Sarbanes–Oxley, the district court noted the Supreme Court's direction on this issue as follows:

> While Congress may enlarge a limitations period, Congress' acts do not revive a cause of action that has become time-barred unless Congress specifically provides for retroactive application. *See Hughes Aircraft Co. v. United States*, 520 U.S. 939, 950, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) ("extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action : . . a newly enacted statute of limitations that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme"); *INS v. St. Cyr*, 533 U.S. 289, 317, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("a statement that a statute will become effective on a certain date does not even arguably support that it has any application to conduct that occurred at an earlier date") (stating that while Congress has the power to enact laws with retroactive effects, it must clearly and unambiguously state that the law applies retroactively).

*Id.* at 733–734.

A similar conclusion was reached by the district court in *In re: Enterprise Mortgage Acceptance Co., L.L.C.*, 295 F.Supp.2d 307, 312–317 (S.D.N.Y.2003), *aff'd*, 391 F.3d 401 (2d Cir.2004), wherein the court rejected plaintiffs' contention that the language of the statute was evidence of Congress' express intent to revive stale claims. The court further relied on the Supreme

Court's decision in *Hughes* for the proposition that elimination of a prior defense created a new cause of action. Interestingly, the court noted that while the Fifth, Eighth, Ninth, Tenth and Eleventh Circuits adopted a similar position in connection with an analogous statute of limitations, a contrary position taken by the Sixth Circuit in the *Forest* action was distinguishable since it was determined prior to the decision in *Hughes*.

Earlier last year, the district court in *In re Enron Cop. Securities, Derivative & ERISA Litigation*, 2004 WL 405886 (S.D.Tex. Feb. 25, 2004) (unpublished), considered the same issue in a motion to intervene by a putative class. In its analysis, the court took note of the test under *Landgraf* as well as noting the cautionary language in *Hughes*. The court examined several appellate decisions relative to analogous statutes, such as the Financial Institutions Reform, Recovery and Enforcement Act or Religious Freedom Restoration Act, all of which agreed upon the requirement of a clear expression of Congressional intent before determining that the absence of specific intent on retroactivity precluded retroactive application of Sarbanes–Oxley. *See also, Quaak v. Dexia, S.A.*, 357 F.Supp.2d 330 (D.Mass. 2005) (declining to find Sarbanes–Oxley retroactive); *Lieberman v. Cambridge Partners, L.L.C.*, 2004 WL 1396750 (E.D.Pa. June 21, 2004) (unpublished) (finding that a cause of action extinguished prior to the enactment of Sarbanes–Oxley was time-barred).

In contrast, the district court in *Ato Ram II, Ltd. v. SMC Multimedia Corp.*, 2004 WL 744792 (S.D.N.Y. April 7, 2004), determined that Sarbanes–Oxley applied only to the claims under § 10(b) since those claims *were not yet barred at the time the amendments went into effect*. The court further found Sarbanes–Oxley

did not apply to § 12 violations. *Id.* at 2004 WL 744792 *5 citing *In re World-Com, Inc. Secs. Litig.*, 294 F.Supp.2d 431, 444 (S.D.N.Y.2003); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 272 F.Supp.2d 243, 265 (S.D.N.Y.2003). *See also, Friedman v. Rayovac Corp.*, 295 F.Supp.2d 957, 975 (W.D.Wis.2003).

In addition to the Second and Fourth Circuits, the Seventh Circuit recently joined the majority of courts determining Sarbanes–Oxley does not revive extinguished claims. *See Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005).

With this case law in mind, the Court turns to the retroactivity analysis under *Landgraf.*

### 2. *Analysis under Landgraf*

In *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994), the Supreme Court reiterated the presumption against retroactivity and set forth the test for rebutting that presumption:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

In conducting this analysis, the first question to be determined is whether the text of the statute expressly prescribes a temporal reach. The Supreme Court has addressed this standard as follows:

> The standard for finding such unambiguous direction is a demanding one. "[C]ases where this Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328, n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

*I.N.S. v. St. Cyr*, 533 U.S. 289, 316–317, 121 S.Ct. 2271, 2288, 150 L.Ed.2d 347 (2001).

The courts which have examined the issue of retroactivity regarding Sarbanes–Oxley under *Landgraf* have determined the statutory language does not meet the express prescription test. *See Roberts v. Dean Whitter Reynolds, Inc.*, 2003 WL 1936116, at *2; *Glaser v. Enzo Biochem, Inc.*, 303 F.Supp.2d at 734; *In re Enterprise Mortgage Acceptance Co., LLC*, 295 F.Supp.2d at 316; *In re Enron Corp. Sec.*, 2004 WL 405886 at *17. Having again examined the statutory language set forth above, this Court does not find language which is "so clear that it could sustain only one interpretation" as to retroactivity. *St. Cyr, supra* (citation omitted).

The next step in the *Landgraf* analysis considers "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483. As noted by the Court in *St. Cyr*, "[a] statute has retroactive effect when it 'takes away or impairs vested rights acquired under existing laws, or creates new obligations, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past ...'" 533 U.S. at 321, 121 S.Ct. 2271. (Citations omitted.)

Although not presented with the precise issue of a revival of time-barred claims, the

Supreme Court in *Hughes Aircraft Co. v. United States,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), confronted the issue of whether an amendment to the False Claims Act allowed private parties to assert claims previously reserved to the government. There, the Court touched upon the issue of allowing an extended statute of limitations to revive a previously extinguished cause of action as follows:

> The 1986 amendment would revive that action, subjecting Hughes to previously foreclosed *qui tam* litigation, much like extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action, see, *e.g. Chenault v. U.S. Postal Service,* 37 F.3d 535, 537, 539 (C.A.9 1994) (relying on *Landgraf* in concluding that "a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would alter the substantive rights of a party and increase a party's liability" (internal quotation makes omitted)). This is true even if a cause of action remained open to some other party.

*Id.* at 950, 117 S.Ct. 1871. Applying the *Hughes* reasoning to this action, extension of Sarbanes–Oxley to a claim which prior to the amendment would have been extinguished would divest a defendant of a material defense. This is the essence of a prohibited retroactive effect discussed in *Landgraf,* 511 U.S. at 267–269, 114 S.Ct. 1483.

The Court must then ascertain whether there is clear congressional intent which supports retroactivity. Legislative history consists of reports as well as remarks and statements; however, as noted by *Landgraf* "partisan statements ... cannot plausibly be read as reflecting any general agreement." 511 U.S. at 262, 114 S.Ct. 1483. Earlier, the Court in *Garcia v.*

*United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984), discussed the weight given to legislative history as follows:

> In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which "represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Zuber v. Allen,* 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969). We have eschewed reliance on the passing comments of one Member, *Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982), and casual statements from the floor debates. *United States v. O'Brien,* 391 U.S. 367, 385, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In *O'Brien, supra,* 391 U.S. at 385, 88 S.Ct. at 1683, we stated that Committee Reports are "more authoritative" than comments from the floor, and we expressed a similar preference in *Zuber, supra,* 396 U.S. at 187, 90 S.Ct. 314.

(Footnote omitted.)

The Senate Judiciary Report of May 2002, in its section by section analysis, reviewed the aspect addressing the statute of limitations as follows:

> This provision states that it is not meant to create any new private cause of action, but only to govern already existing private causes of action under federal securities laws.

S.Rep. No. 107–146 at *12 (2002). Moreover, the additional views of several committee members commented on the existence of private rights of action:

We agree that Section 4 of this bill is not intended to create a new private right of action or to broaden any existing private right of action.

*Id.* at *29. Subsequent to this Report, Senator Leahy requested that his floor remarks on the final passage of Sarbanes–Oxley be included in the record entitled Legislative History of Title VIII of HR 2673: The Sarbanes–Oxley Act of 2002. 148 CONG. REC. S7418–01 (2002). In this section by section analysis, the report addresses the proposed lengthened statute of limitations in the following manner:

This provision states that it is not meant to create any new private cause of action, but only to govern all the already existing private causes of action under the various federal securities laws that have been held to support private causes of action. This provision is intended to lengthen any statute of limitations under federal securities law, and to shorten none. The section, by its plain terms, applies to any and all cases filed after the effective date of the Act, *regardless of when* the underlying conduct occurred.

*Id.* (Emphasis added.) When this latter report is read in conjunction with the former senate judiciary report, an inconsistency in the legislative history precludes a finding that there was clear congressional intent to overcome the presumption against retroactivity. *See In re Enterprise Mortgage,* 295 F.Supp.2d at 312–317 (providing thorough examination of retroactivity of Sarbanes–Oxley under *Landgraf* analysis with special emphasis on legislative history and lack of clear congressional intent).

In sum, both the language and legislative history do not support a finding that Sarbanes–Oxley is to be applied retroactively. Accordingly, the Receiver's arguments are without merit and the Defen-dant's motion to dismiss is well taken as to the claims contained in Counts 1 and 2.

## D. Remaining Claims

While the Defendant's motion is successful as to the federal securities claims, the civil RICO claim remains pending as do the state law claims contained in Counts Four through Ten. In the absence of specific arguments aimed at dismissing these causes of action, they remain unchallenged and viable at this juncture of the litigation. As a result, the Defendant is granted until April 29, 2005 to file his answer to these remaining claims.

### CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (Doc. No. 12) is granted as to Counts One and Two but denied in all other respects. Defendant is granted until April 29, 2005 to file an answer to the remaining claims.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant's motion to dismiss (Doc. No. 12) is granted as to Counts One and Two but denied in all other respects.

FURTHER ORDERED that Defendant is granted until April 29, 2005 to file an answer to the remaining claims.